UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Irvin Joseph

     v.

Old Dutch Mustard

Civil No. 19-cv-1211-LM
Opinion No. 2020 DNH 221 P

# O R D E R

Plaintiff Irvin Joseph, proceeding pro se, brings this employment discrimination action against his former employer, Old Dutch Mustard Company, Inc., d/b/a Pilgrim Food ("Old Dutch" or "the company"). Joseph brings six counts against the company in his second amended complaint, each of which asserts a violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. Joseph moves for summary judgment on five counts. Doc. no. 23. Old Dutch objects and cross-moves for summary judgment on three counts. Doc. no. 25. For the reasons stated below, Joseph's motion is denied, and Old Dutch's motion is granted in part and denied in part.

## STANDARD OF REVIEW

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the" nonmovant. Rodríguez-Cardi v. MMM Holdings, Inc., 936 F.3d 40, 47 (1st Cir.

2019) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).  A fact is material if it has "the potential to affect the outcome of the suit under the applicable law."  Id. at 46 (quoting Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017)).  All facts and reasonable inferences are viewed in the light most favorable to the nonmovant.  Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013).  This same standard applies when, as here, the parties file cross-motions for summary judgment.  Adria Int'l Grp., Inc. v. Ferré Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001).

## BACKGROUND

The following facts are drawn from the record and are not in genuine dispute, except where indicated.  Old Dutch operates a thirty-two acre mustard and vinegar manufacturing facility in Greenville, New Hampshire.  Two locations at this facility are relevant to this case: the vinegar plant (where the acetators used to make vinegar are kept) and the "barrel house" (where vinegar made at the vinegar plant is filtered and prepared for storage and distribution).  The vinegar plant and barrel house share a building, and the company often cross-trains employees hired for one location to work in the other.

In January 2014, Old Dutch hired Joseph as a full-time chemical operator in its vinegar plant, at a wage of fifteen dollars per hour.  The company also cross-trained Joseph to work in the barrel house.  On September 24, 2014, Joseph injured his back while working in the barrel house.  His injury required surgery, physical

therapy, and an extended medical leave.  Although Joseph's physician initially informed the company that he could return in early December 2014, he was not cleared to return to work without physical restrictions until May 2015.

During Joseph's absence, the company transferred another employee, Julien Selles, to the vinegar plant to cover Joseph's duties.  When Joseph was cleared to return to work without restrictions in May, the company decided to move Joseph to the barrel house full time rather than transfer Selles again.  Joseph's rate of pay and hours of work remained the same, though work in the barrel house was more physically demanding and generally more unpleasant than in the vinegar plant.

Charles Santich is the owner and general manager of Old Dutch.  Joseph—who is Black and Haitian—alleges that Santich directed racially-charged comments towards him on two occasions.  Specifically, Joseph alleges that Santich twice called him a "n*****."

On June 17, 2015, the company terminated Joseph's employment.  Old Dutch states that Santich reviewed the company's finances that month and concluded that the barrel house had one too many employees: although both Joseph and another employee named Christopher Thibault were working in the barrel house, it needed only one employee at a time.  Thibault had worked for the company for twenty years, was cross-trained in a variety of positions outside the vinegar plant and barrel house, and, according to Old Dutch, was a "standout" employee.  Doc. no. 27-5 at 5.  By contrast, Joseph had worked for the company for less than two years, was

trained to work only in the vinegar plant and barrel house, and, according to the company, was only an "average" employee.  Id.

Joseph was not paid for unused vacation time when he was terminated.  In addition, Joseph states that he saw an online job posting for a position at the vinegar plant two days after he was terminated.  He claims he submitted his application materials for this position but was not hired.

In August 2015, Joseph filed a charge of discrimination with the New Hampshire Commission on Human Rights ("NHCHR").  NHCHR investigated his charge and issued a finding of probable cause.  However, after a hearing on the merits, NHCHR denied Joseph's claims.  Joseph then brought the instant suit against Old Dutch.

Joseph's second amended complaint states six claims against the company: hostile work environment (Count I); discriminatory discharge (Count II); discriminatory failure-to-rehire (Count III); discriminatory transfer (Count IV); discrimination in failing to award vacation pay (Count V); and discrimination in starting wages (Count VI).  Both parties move for partial summary judgment. Joseph moves for summary judgment on Counts II, III, IV, V, and VI.  The company moves for summary judgment on Counts IV, V, and VI.

The court will begin with Joseph's motion and evaluate his entitlement to summary judgment count-by-count.  The court will then turn to Old Dutch's motion.

## DISCUSSION

I.   Joseph's Motion for Partial Summary Judgment

Joseph moves for summary judgment on Counts II through VI.[1]  Each count states a claim of discrimination under Title VII.  A plaintiff may seek to prove a Title VII claim by either direct or circumstantial evidence of discrimination.  See Darbouze v. Toumpas, Civ. No. 10-cv-252-LM, 2011 WL 6300702, at *5 (D.N.H. Dec. 16, 2011).  In this context, "'direct evidence' refers to 'a smoking gun' showing that the decision-maker relied upon a protected characteristic in taking an employment action."  PowerComm, LLC v. Holyoke Gas & Elec. Dep't, 657 F.3d 31, 35 (1st Cir. 2011) (emphasis omitted) (quoting Smith v. F.W. Morse & Co., 76 F.3d 413, 421 (1st Cir. 1996)); see, e.g., E.E.O.C. v. Alton Packaging Corp., 901 F.2d 920, 922-23 (11th Cir. 1990) (statement by plant's general manager that "if it was his company, he wouldn't hire any black people" was direct evidence of discrimination).  Where there is direct evidence of discrimination, the employer bears the burden of persuasion, and must "affirmatively prove that it would have made the same decision even if it had not taken the protected characteristic into account."  F.W. Morse, 76 F.3d at 421.  When, as is often the case, there is no direct evidence of discrimination, a Title VII claim proceeds under the McDonnell Douglas framework.  See McDonnell

---

[1] Joseph also submits two "evidentiary objections" alongside his summary judgment materials.  Joseph first asks this court to exclude from the summary judgment record an exhibit Old Dutch submitted in support of its cross-motion.  Old Dutch concedes that it submitted this exhibit in error.  Thus, the court will not consider this exhibit, and Joseph's first request is moot.  Joseph also seeks to exclude from the summary judgment record an affidavit Old Dutch provided Joseph in discovery.  However, Old Dutch has not actually submitted this affidavit in support of its cross-motion.  Thus, Joseph's second request is denied.

Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973); Darbouze, 2011 WL 6300702, at *5.  While that framework shifts the burden of production, the burden of persuasion remains with the plaintiff at all times.  See Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 221 (1st Cir. 2007).

Here, Joseph does not argue that there is direct evidence of discrimination. The court will therefore analyze his claims under the McDonnell Douglas framework.

The McDonnell Douglas analysis proceeds in three steps.  First, the plaintiff must establish a prima facie case of discrimination.  Mariani-Colón, 511 F.3d at 221.  A successful prima facie showing creates a rebuttable presumption of discrimination.  See Vélez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 447 & n.3 (1st Cir. 2009).  Second, if the plaintiff establishes a prima facie case, "the burden of production . . . shifts to the employer 'to articulate a legitimate, nondiscriminatory explanation for its actions.'"  Id. at 447 (quoting Arroyo-Audifred v. Verizon Wireless, Inc., 527 F.3d 215, 219 (1st Cir. 2008)).  Carrying this burden rebuts the presumption of discrimination.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993).  Third, if the employer carries its burden of production, the plaintiff must prove that the employer's given explanation is a pretext for discrimination.  Mariani-Colón, 511 F.3d at 221.  Success depends on "persuading the [factfinder] that [the plaintiff] has been the victim of intentional discrimination."  Feliciano de la Cruz v. El Conquistador Resort & Country Club,

218 F.3d 1, 6 (1st Cir. 2000) (quoting Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S.

248, 256 (1981)).


    A.    <u>Count II (Discriminatory Discharge Claim)</u>

    Joseph first moves for summary judgment on the claim in Count II of his

second amended complaint.  The court construes Count II as alleging that Old

Dutch unlawfully terminated Joseph because of his race and national origin in

violation of Title VII.[2]  <u>See</u> 42 U.S.C. § 2000e.  To establish a prima facie case on his

discriminatory discharge claim, Joseph must show that: (1) he belonged to a

protected class; (2) he was performing his job at a level that rules out the possibility

that he was terminated for poor performance; (3) he was nevertheless terminated;

and (4) the company sought a replacement for him with roughly equivalent

qualifications.  <u>See</u> Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003).

    There are no material facts in dispute as to the first three elements of this

prima facie case.  Joseph is a Black Haitian and is thus is a member of a protected

class.  <u>See</u> Benoit, 331 F.3d at 173 n.2.  Old Dutch does not dispute that Joseph's job

---

[2] Although Count II of Joseph's second amended complaint only explicitly references discrimination based upon national origin, Joseph identifies his national origin as "Haitian African American."  Doc. no. 12 ¶ 42.  For this reason, the court construes this claim—brought and drafted by a self-represented party—as alleging both race and national origin discrimination.  While these are not identical forms of discrimination, they "may present identical factual issues" when a victim's nation of origin is predominantly populated by persons of one race.  Sinai v. New England Tel. and Tel. Co., 3 F.3d 471, 475 (1st Cir. 1993); <u>see also</u> Massaquoi v. 20 Maitland Street Ops. LLC, Civ. No. 18-cv-296-LM, 2018 WL 6201714, at *3-*4 (D.N.H. Nov. 28, 2018).

performance was adequate.  And Joseph was indeed terminated in June 2015.

However, a factual dispute as to whether Old Dutch sought a replacement for him

after his termination precludes entry of summary judgment for Joseph on his

discharge claim.

Joseph alleges that on June 19, 2015—two days after his termination—Old

Dutch posted a job opening for a "Vinegar Production Operator" on the website

"JobsInNH.com" ("JobsInNH").  Joseph argues that this position effectively sought

his replacement, and he has produced a printout of what appears to be the job

posting.  See doc. no. 23-1 at 23-24.  He claims that the company filled this open

position by hiring an employee named Patrick Cairney.  Joseph identifies

evidentiary support for this claim: an email and cover letter Cairney sent to the

company in July 2015 "in consideration for employment as a Vinegar Production

Operator."  Doc. no. 23-1 at 55.

Old Dutch denies having posted any such open position, or that there was

such an open position following Joseph's termination.  In preparing its summary

judgment materials, the company's Human Resources Director, Denise Blanchard,

performed a search of the company's JobsInNH account.  She searched all the

company's inactive and archived job postings on the site dating back to 2007 and

asserts that she found no evidence the company posted an opening for a vinegar

production operator on JobsInNH in June 2015.  See doc. no. 38-1 ¶ 6.

Old Dutch submits a printout of Blanchard's search results alongside its

summary judgment materials.  Doc. no. 38-2.  The search results show that Old

Dutch posted an opening for a "Production Line Leader" on JobsInNH in April 2015, as well as an opening for a "Batch Maker" in October 2015. There are no postings for any positions, let alone for a position as a vinegar production operator, in the months between April and October.

As for Cairney, the company admits that it hired Cairney in August 2015 but denies that he replaced Joseph. Old Dutch states that, approximately a week after Joseph was discharged, one of the company's "mustard makers" was unexpectedly arrested and spent several months in jail. Old Dutch transferred Thibault to the arrested employee's position, which created an opening in the building housing the vinegar plant and barrel house. The company hired Cairney for this opening.[3]

Thus, there is a genuine dispute as to whether Old Dutch sought a replacement for Joseph upon his termination.[4] See Rodríguez-Cardi, 936 F.3d at 47. This fact is material because Joseph must prove that Old Dutch sought a replacement for him in order to establish a prima facie case. See Benoit, 331 F.3d

---

[3] Furthermore, in the email from Cairney to Old Dutch on which Joseph relies, Cairney states that the position he is applying for was advertised on July 20, 2015. Doc. no. 23-1 at 55. And the email does not specify where Cairney saw the advertisement—on JobsInNH or somewhere else. See id.

[4] In his summary judgment motion, Joseph points to an "employee record" provided by Old Dutch showing that the company hired five new employees in June 2015—though he does not argue that this document supports a prima facie case of discriminatory discharge. Although the record indeed shows that the company hired five employees in June 2015, it does not show that any of these employees were hired for the position from which Joseph was terminated or that they held similar qualifications to Joseph. See Campbell v. Bristol Cmty. Coll., 395 F. Supp. 3d 175, 187-88 (D. Mass. 2019); Darbouze, 2011 WL 6300702, at *8. Thus, the employee record does not establish that Old Dutch sought a replacement for Joseph with roughly equivalent qualifications.

at 173; Rodríguez-Cardi, 936 F.3d at 46.  Because a reasonable factfinder could conclude that Joseph has not established a prima facie case on his discriminatory discharge claim, he is not entitled to summary judgment on that claim.  See Rodríguez-Cardi, 936 F.3d at 46-47.

Even assuming, however, that Joseph has established a prima facie case, the company has articulated a nondiscriminatory reason for his termination: overstaffing.  See doc. nos. 27-5, 28.  In June 2015, the company determined that the barrel house required only one employee.  However, both Joseph and Thibault were working there at that time.  The company states it decided to retain Thibault because he had seniority, greater versatility, and was a better performer.

Because Old Dutch has articulated a nondiscriminatory reason for Joseph's discharge, he is entitled to summary judgment only if he shows there is no genuine dispute of material fact that Old Dutch's stated reason is a pretext for discrimination.  See Mariani-Colon, 511 F.3d at 221; Rodríguez-Cardi, 936 F.3d at 47.

Joseph contends that Old Dutch's stated reason is pretextual because the company hired new employees in other departments in June 2015, and because internal company documents associate Thibault with a department other than the barrel house.  While Old Dutch does not appear to dispute these facts, they do not compel the conclusion that the company's stated reason for Joseph's termination—that the barrel house was overstaffed—is a pretext.  Viewing the evidence in the light most favorable to the company, a reasonable factfinder could conclude that

hiring employees to work outside the barrel house is consistent with the barrel house being overstaffed. Similarly, a reasonable factfinder could conclude that, even if company documents associated Thibault with another department, he was nonetheless working in the barrel house in June 2015.

In summary, Joseph has failed to demonstrate the lack of a genuine dispute that the company sought a replacement for him after his termination. He has also failed to demonstrate the lack of a genuine dispute that the company's stated reason for his discharge is a pretext for discrimination. Thus, as to Joseph's discriminatory discharge claim, his motion for summary judgment is denied.

B.    Count III (Failure-to-Rehire Claim)

Joseph moves for summary judgment on the claim in Count III of his second amended complaint. In Count III, Joseph claims that Old Dutch unlawfully failed to rehire him after his termination because of his race and national origin. A plaintiff establishes a prima facie case of discriminatory failure-to-hire by showing that: (1) he is a member of a protected class; (2) he applied for an open position; (3) he was not selected for the position; and (4) the employer filled the position by hiring another individual with similar qualifications. Gu v. Boston Police Dep't, 312 F.3d 6, 11 (1st Cir. 2002).

Here, as with Joseph's discriminatory discharge claim, there is a genuine dispute of fact as to whether there was an open position at the company following his termination. Joseph contends that, shortly after his termination in June 2015,

11

he applied for a vinegar production operator position posted on JobsInNH but was not hired.  However, as discussed, Old Dutch has produced evidence from which a reasonable factfinder could conclude that the company did not post any such positions on JobsInNH in June 2015.  Thus, a genuine dispute exists as to whether Joseph applied for an open position at the company following his termination.  See Gu, 312 F.3d at 11.

Even assuming Joseph has established a prima facie case, Old Dutch has given a nondiscriminatory explanation for why it did not rehire him.  Although Joseph states that he applied for the vinegar production operator position online and by fax, the company states it has no record of receiving any application materials from Joseph after his termination.  Doc. no. 28 ¶ 24.  Joseph contends that this explanation is pretextual because, in the course of discovery, the company provided him with a copy of the application materials he submitted for the June 2015 position.  See doc. no. 39-1 at 24-28.  The company does not explain how it came to possess Joseph's application materials despite its claim of never having received them.  However, even assuming Joseph has demonstrated the lack of a genuine dispute that the company's given reason for failing to rehire him is pretextual, he has failed to demonstrate that, as a matter of law, the company's true reason is discriminatory.

A finding that an employer's given reason for an adverse employment action is not its true reason can only permit an inference of discriminatory animus—it does not compel such an inference.  See Hicks, 509 U.S. at 511; see also Theidon v.

Harvard Univ., 948 F.3d 477, 496 n.29 (1st Cir. 2020) (explaining that "the plaintiff's burden at [the third McDonnell Douglas] stage comprises two separate tasks": the "plaintiff must present sufficient evidence to show both that the employer's articulated reason for the adverse employment decision is a pretext and that the true reason is discriminatory" (emphasis added; internal quotation marks and brackets omitted) (quoting Domínguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 430 n.5 (1st Cir. 2000))).  This distinction is crucial in evaluating a Title VII plaintiff's motion for summary judgment.  See Hicks, 509 U.S. at 509-11 (holding that Court of Appeals erred by granting plaintiff judgment as a matter of law on the sole basis that plaintiff had established a prima facie case and had proven employer's stated reasons to be pretextual).

As the First Circuit has explained, even "assuming the original prima facie case plus the evidence of pretext suffices to raise a reasonable inference of discrimination, this does not automatically entitle the plaintiff to judgment." Samuels v. Raytheon Corp., 934 F.2d 388, 392 (1st Cir. 1991); accord Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146 (2000) (noting that "the factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not compel judgment for the plaintiff" (emphasis omitted)).  "[S]uch a showing only creates an issue of material fact" as to whether the company's true reason for the complained-of action was discriminatory.  Samuels, 934 F.2d at 392. Thus, even if there is no genuine dispute that Old Dutch's given reason is pretextual, that would not suffice to demonstrate the lack of a genuine dispute that

the company's true reason is discriminatory.  See Hicks, 509 U.S. at 509-11;

Samuels, 934 F.2d at 392.

　　In summary, Joseph has failed to demonstrate the lack of a genuine dispute

that he applied for an open position at the company following his termination.  He

has also failed to demonstrate the lack of a genuine dispute that the company's

stated reason for failing to rehire him is a pretext for discrimination.  For these

reasons, the court denies Joseph's motion for summary judgment on Count III.


　　C.　　Count IV (Discriminatory Transfer Claim)

　　Joseph also moves for summary judgment on the claim in Count IV of his

second amended complaint.  Count IV alleges that Old Dutch discriminated against

Joseph by transferring him to the barrel house after he returned from medical

leave.[5]

　　Joseph focuses much of his argument upon whether his transfer to the barrel

house constituted an adverse employment action.  However, whether the transfer

was an adverse employment action is only relevant to his prima facie case.  See,

e.g., Bonilla-Ramirez v. MVM, Inc., 904 F.3d 88, 94 (1st Cir. 2018); see also

Lockridge v. The Univ. of Me. Sys., 597 F.3d 464, 470 (1st Cir. 2010) (explaining

that, although the precise "elements of the prima facie case vary according to the

nature of the plaintiff's claim," the plaintiff must always show "that she suffered an

_____

[5] Count IV does not specify whether the claim alleged therein is one for racial discrimination, national origin discrimination, or both.

14

adverse employment action").  While establishing a prima facie case creates a presumption of discrimination and shifts the burden of production to the employer, that presumption is extinguished if the employer articulates a legitimate, nondiscriminatory reason for the complained-of employment action.  See Hicks, 509 U.S. at 506-07.

Assuming without deciding that Joseph has established a prima facie case, Old Dutch has articulated a nondiscriminatory reason for moving him to the barrel house after he returned from medical leave.  The company states that, after Joseph went on leave in September 2014, it transferred Selles to the vinegar plant to cover Joseph's duties.  The company was originally informed that Joseph would return to work in December 2014; however, Joseph's physician did not clear him to return to work without physical restrictions until May 2015, approximately eight months after his injury.  When Joseph returned in full in May, the company determined it was preferable to leave Selles where he had been working for the past eight months and instead move Joseph to the barrel house, where he was already trained and had worked previously.

Because Old Dutch has articulated a nondiscriminatory reason for the transfer, Joseph can obtain summary judgment on his discriminatory transfer claim only if he demonstrates that there is no genuine dispute of material fact that the company's given reason is a pretext for discrimination.  For the reasons discussed in Part II.A, infra, Joseph has failed to so demonstrate.  The court therefore denies Joseph's motion for summary judgment on Count IV.

D.     Count V (Vacation Pay Claim)

Joseph next moves for summary judgment on the claim in Count V of his second amended complaint.  Count V alleges that Old Dutch unlawfully discriminated against Joseph by failing to compensate him for his accrued, unused vacation time at the time of his termination.

Assuming without deciding that Joseph has established a prima facie case on his vacation pay claim, Old Dutch has come forth with a nondiscriminatory reason for why it did not pay Joseph for his unused vacation time when he was discharged: the company claims he had not accrued any vacation time under its vacation policy as of June 2015.  Here, as with Joseph's failure-to-rehire claim, see Part I.B, supra, there is evidence that the company's stated reason is pretextual; nevertheless, Joseph is not entitled to judgment as a matter of law on his vacation pay claim.

Old Dutch's vacation policy states that "employees who shall have been employed for a period of one year or more on January 1st in each year shall receive a vacation of two (2) weeks with pay."  Doc. no. 28-1 at 1.  The policy further states that "an employee who shall have been employed for a period exceeding six (6) months but less than one (1) year on January 1st of each year, shall receive a vacation of one week."  Id.  The policy also includes an illustrative example: "if an employee was hired on May 1st of that current year, then the employee would earn one (1) week paid vacation time the following January 1st.  If an employee is hired

after June 1st of that current year, then the employee would not receive any paid vacation leave until the following year." Id.[6]

Old Dutch states simply that it did not compensate Joseph for vacation time because he had not accrued any. According to the company, even though Joseph was hired on January 6, 2014, he was not "actively employed as of January 1, 2015 and therefore was not entitled to any vacation time in 2015." Doc. no. 26 at 9. In essence, Old Dutch contends that, because Joseph went on medical leave beginning September 2014 and returned after January 1, 2015, he was not entitled to paid vacation time in 2015.

Old Dutch's assertion that Joseph had not accrued any vacation time is contrary to the policy's plain language. See, e.g., Teva Pharms. USA, Inc. v. Sandoz, Inc., 574 U.S. 318, 325 (2015) (proper construction of a written document is generally a question of law for the court). The policy does not state that an employee must be "actively" employed on January 1 in order to be entitled to vacation time. The policy simply requires that a person have been "employed" for at least six months on January 1. Doc. no. 28-1 at 1. The plain meaning of "employed" is "having a job working for a company or another person." Employed, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/employed (last visited Dec. 18, 2020); see United States v. Lachman, 387 F.3d 42, 50 (1st Cir. 2004) (noting that dictionaries "are a fundamental tool in ascertaining . . . plain

---

[6] The vacation policy also states that "earned but not used vacation will not be paid if an employee leaves/quits employment." Doc. no. 28-1 at 2. Neither party ascribes any significance to this provision. Thus, the court does not consider it.

meaning"). Here, Joseph had a job working for Old Dutch on January 1, 2015. He was on medical leave from that job, but taking medical leave did not alter his status as an employee of the company. And, having been employed by the company for more than six months but less than one year on January 1, 2015, he should have been awarded one week of vacation time on that date.

That the company's stated reason for the complained-of action is inconsistent with its own policy constitutes evidence of pretext. See Acevedo-Parilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 143 (1st Cir. 2012). However, as with Joseph's failure-to-rehire claim, even if there is no genuine dispute that the company's stated reason is pretextual, that would not entitle Joseph to judgment as a matter of law on his vacation pay claim. See, e.g., Reeves, 530 U.S. at 146-47. "The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is correct.'" Id. (quoting Hicks, 509 U.S. at 524).

Apart from evidence that the company's stated reason is pretextual, Joseph does not identify evidence that the true reason he was not paid for his unused vacation time is because he is Black or Haitian. Although Joseph asserts that Old Dutch paid other employees for their unused vacation time upon termination, he points to no evidence that supports his assertion.[7] See Theriault v. Genesis

---

[7] Joseph does point to one of Selles' payroll records. See doc. no. 32 at 17; doc no. 23-1 at 87-88. A close review of this document does not reveal that the company paid Selles for unused vacation time upon termination.

HealthCare LLC, 890 F.3d 342, 348 (1st Cir. 2018) (stating that the court need not credit bald assertions in ruling upon a motion for summary judgment).  For that reason, Joseph has failed to demonstrate the absence of a genuine dispute that the company's stated reason for failing to pay him for his unused vacation time is a coverup for discriminatory animus.  Thus, the court denies Joseph's motion for summary judgment on Count V.

     E.    <u>Count VI (Discrimination in Starting Wages Claim)</u>

Finally, Joseph moves for summary judgment on the claim in Count VI of his second amended complaint.  Count VI alleges that Old Dutch discriminated against Joseph in his starting wages.  To make out a prima facie case on this claim, Joseph must show that: (1) he is a member of a protected class; (2) he performed his job in keeping with his employer's expectations; and (3) he was paid less than persons outside his protected class who held the same or similar positions.  <u>See</u> Rathbun v. Autozone, Inc., 361 F.3d 62, 77 (1st Cir. 2004).  Here, while Joseph has satisfied the first two elements, he has produced no evidence that his starting wage was lower than others who held comparable positions.

Joseph argues that he was paid less than three named employees: Selles, Cairney, and Thadryan Sweeney.  He has provided the court with supporting payroll documents.  Doc. no. 23-1 at 80-102.  However, these documents show that Joseph, Sweeney, and Cairney all received the <u>same</u> starting wage of fifteen dollars

per hour.[8]  And while Selles received a starting wage of eighteen dollars per hour, he was hired as a supervisor.  Doc. no. 28 ¶ 27.  Because Joseph has produced no evidence that he was paid a lower starting wage than persons who were hired for comparable positions, he is not entitled to judgment as a matter of law on this claim.  <u>See</u> <u>Rathbun, 361 F.3d at 77</u>.  Thus, the court denies Joseph's motion for summary judgment on Count VI.


      F.    <u>Summary</u>

In summary, Joseph has not demonstrated that he is entitled to judgment as a matter of law on any of the claims upon which he moves for summary judgment. His motion for summary judgment is therefore denied in its entirety.


II.    <u>Old Dutch's Motion for Partial Summary Judgment</u>

The court now turns to Old Dutch's motion for partial summary judgment. Old Dutch moves for summary judgment on the claims in Counts IV, V, and VI of Joseph's second amended complaint.  The court evaluates the company's entitlement to summary judgment count-by-count.

---

[8] The payroll documents do show that Cairney and Sweeney received a one-dollar raise after their first ninety days of employment, whereas Joseph only received a fifty-cent raise.  <u>See</u> doc. no. 23-1 at 81-82, 84.  However, Joseph's second amended complaint does not raise a claim that the company discriminated against him in increasing his wages—his claim is limited to one for "discrimination in starting salary."  Doc. no. 12 at 5-6 (capitalization omitted).

A.   Count IV (Discriminatory Transfer Claim)

Old Dutch first moves for summary judgment on the claim in Count IV of Joseph's second amended complaint.  Count IV alleges that Old Dutch discriminated against Joseph by transferring him to the barrel house after he returned from medical leave.[9]

As discussed in Part I.C, supra, even assuming Joseph has established a prima facie case on this claim, Old Dutch has articulated a nondiscriminatory reason for transferring him to the barrel house.  Thus, Joseph can defeat the company's motion for summary judgment only if he "has identified evidence that would enable a reasonable jury to find that the [company's] proffered reason is pretextual and that" the real reason Joseph was transferred is because he is Black or Haitian.  Lockridge, 597 F.3d at 471.  He has not done so.

Joseph argues that invidious discrimination was the actual reason for his transfer because no other employees were relocated to the barrel house—where conditions were uncomfortable and the work demanding—after returning from medical leave.  He identifies two employees who took medical leave but were not transferred to the barrel house upon their return: Chris Larouche and Selles. Joseph claims that both returned to their previous positions after coming back from medical leave.

---

[9] Count IV does not specify whether the claim is one for racial discrimination, national origin discrimination, or both.

21

Where a Title VII plaintiff seeks to prove discrimination by comparing his treatment to that of other employees, the plaintiff must be "situated similarly in all relevant aspects" to those employees.  Smith v. Stratus Computer, Inc., 40 F.3d 11, 17 (1st Cir. 1994) (quotation omitted).  While the "comparison cases need not be perfect replicas," Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 21 (1st Cir. 1999), Joseph must show that he is similarly situated to Larouche and Selles "in terms of performance, qualifications and conduct, 'without such differentiating or mitigating circumstances that would distinguish' their situations."  Stratus Computer, 40 F.3d at 17 (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)).

In his summary judgment motion, Joseph states only that Larouche was "out for a while" after having back surgery but was given his former position back upon returning.  Doc. no. 23 at 10.  He also states that Selles took medical leave after having hip surgery but was not transferred upon his return.  In support of these statements, Joseph points only to Old Dutch's response to a Request for Admission where the company admitted that Larouche and Selles each took medical leave but were not transferred to the barrel house after returning to work.  See doc. no. 23-1 at 29.

Although the company's response shows that Joseph was similarly situated to Larouche and Selles in one relevant respect—taking medical leave—Joseph has not put forth evidence from which a jury could conclude that they were similar in all relevant respects.  See Lockridge, 597 F.3d at 471; Charles v. Stop & Shop

Supermarket Co., LLC, Civ. No. 10-10726-DJC, 2012 WL 2402790, at *9 & n.9 (D. Mass. June 25, 2012) (plaintiff's failure to "point to any actual evidence (beyond conclusory allegations in the complaint) that he was similarly situated to other employees outside of his protected group and treated differently with respect to" transfers was "fatal" to his opposition to employer's summary judgment motion).

For example, Joseph points to no evidence that Larouche or Selles worked in similar positions to his at the time of their respective leaves.  See, e.g., David v. Bd. of Trs. Of Cmty. Coll. Dist. No. 508, 846 F.3d 216, 226-27 (7th Cir. 2017) (plaintiff failed to show she was similarly situated to comparator because they held different job responsibilities); Taal v. Hannaford Bros. Co., No. 05-CV-82-PB, 2006 WL 146229, at *2-3 (D.N.H. Jan. 19, 2006) (plaintiff raising wage discrimination claim failed to show she was similarly situated to comparators because "the employees who were paid more either held different positions or worked full-time").  Nor does he identify whether they occupied supervisory roles at the time of their leaves.[10] See Vasquez v. Cnty. of Los Angeles, 349 F.3d 634, 631 (9th Cir. 2003) ("Employees in supervisory positions are generally deemed not to be similarly situated to lower level employees.").  Furthermore, Joseph marshals no evidence that his leave was similar in length to that of Larouche and Selles.  See DeMars v. O'Flynn, 287 F. Supp. 2d 230, 243 n.9 (W.D.N.Y. 2003) (plaintiff's discriminatory leave claim did not survive summary judgment because plaintiff failed to identify evidence that comparator employees' leaves were similar in length).  The length of leave is a

---

[10] Indeed, Selles was originally hired as a supervisor.  Doc. no. 28 ¶ 27.

relevant detail because, the longer an employee is absent, the more likely the employer will be required to fill the absent employee's responsibilities, thereby prompting a reassignment upon the absent employee's return.  See Conward v. Cambridge Sch. Comm., 171 F.3d 12, 20 (1st Cir. 1999) (noting that the comparison cases "must closely resemble one another in respect to relevant facts and circumstances").  Finally, Joseph puts forth no evidence that the decisions as to where to place all three employees upon their returns were made by the same supervisor.  Failing to identify a common decisionmaker generally "precludes a showing of similarity because when different decisionmakers are involved, two decisions are rarely situated similarly in all relevant respects."  Radue v. Kimberly-Clark Corp., 219 F.3d 612, 618 (7th Cir. 2000) (quotation omitted) (cited with approval in Caraballo-Caraballo v. Corr. Admin., 892 F.3d 53, 59 (1st Cir. 2018)), overruled on other grounds by Ortiz v. Werner Enters., Inc., 834 F.3d 760 (7th Cir. 2016).

By contrast, Old Dutch has put forth undisputed evidence that Joseph was not similarly situated to Larouche and Selles in some relevant respects.  See doc. no. 28 ¶ 15.  According to the company's personnel files, Larouche took a three-month medical leave in 2009 and Selles never took medical leave for longer than two weeks.  See Conward, 171 F.3d at 20; DeMars, 287 F. Supp. 2d at 243 n.9.  The short lengths of their leaves as compared to Joseph's—which lasted approximately eight months—undercuts the notion that they are similarly situated in all relevant respects.

In summary, based on the evidence presented, no reasonable factfinder could conclude that Joseph was similarly situated to Larouche and Selles in all relevant respects.  Thus, to the extent Joseph's discriminatory transfer claim is premised on differential treatment, it fails as a matter of law.  See Lockridge, 597 F.3d at 471. Old Dutch's motion for summary judgment is therefore granted as to that claim.


B.      Count V (Vacation Pay Claim)

Old Dutch next moves for summary judgment on the claim alleged in Count V of Joseph's second amended complaint.  Count V alleges that Old Dutch discriminated against Joseph because of his race or national origin by failing to pay him for his accrued, unused vacation time upon his termination.

Old Dutch contends that it is entitled to summary judgment on Joseph's vacation pay claim because he has adduced no evidence that the company's stated reason for failing to pay him for his unused vacation time is a pretext for discrimination.[11]  However, as the discussion in Part I.D, supra, makes clear, a reasonable factfinder could conclude that the company's proffered reason—that Joseph had not accrued any vacation time—is pretextual.

Depending on the circumstances, a factfinder can infer discriminatory animus from evidence of pretext along with the evidence supporting the plaintiff's

---

[11] Old Dutch does not seek summary judgment on the grounds that Joseph has failed to establish a prima facie case on his vacation pay claim.  Thus, the court does not consider this possibility.  See Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir 2010) (party seeking summary judgment has the burden of informing the court of the basis for the motion).

prima facie case.  See Ahmed v. Johnson, 752 F.3d 490, 498 (1st Cir. 2014); see also Domínguez-Cruz, 202 F.3d at 430 n.5 (explaining that additional evidence beyond prima facie case and evidence of pretext "is not necessarily required" to defeat employer's motion for summary judgment); Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 167 (1st Cir. 1998) ("[W]here a plaintiff in a discrimination case makes out a prima facie case and the issue becomes whether the employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be particularly cautious about granting the employer's motion for summary judgment." (quotation omitted)).  The extent to which the employer's stated reason "lacks rationality" bears on the extent to which the factfinder can reasonably infer that the stated reason is a sham for discrimination.  Vélez, 585 F.3d at 452.  The more irrational the employer's explanation, the more reasonable the inference that the explanation is being given only to mask invidious discrimination.  See id.  That inference becomes even more reasonable "if no explanation is offered other than the reason rejected as pretextual."  Thomas v. Eastman Kodak Co., 183 F.3d 38, 64 (1st Cir. 1999).

Here, as discussed in Part I.D, supra, a jury could conclude that Old Dutch's stated reason for failing to pay Joseph his accrued vacation time is irrational.  The company's assertion that Joseph had not accrued any vacation time is inconsistent with its own policy.  Furthermore, the company offers no other explanation as to why it did not pay Joseph for his unused vacation time.  Based on the lack of any rational explanation for the company's conduct, and viewing the evidence in the

light most favorable to Joseph, a reasonable factfinder could permissibly infer that the proffered explanation masks discrimination.  See Hodgens, 144 F.3d at 167.  In other words, there is a genuine dispute as to whether the company's stated reason for failing to pay Joseph for his unused vacation time is a pretext for discrimination. For that reason, the court denies Old Dutch's motion for summary judgment on Count V.

    C.    <u>Count VI (Discrimination in Starting Wages Claim)</u>

Old Dutch moves for summary judgment on the claim in Count VI of the second amended complaint.  Count VI alleges that Old Dutch Mustard discriminated against Joseph in his starting wages.

Even viewing the record in the light most favorable to Joseph, Joseph has failed to put forth any evidence that his starting wages were lower than other employees who held similar positions.  Such evidence is required to make out a prima facie case.  See Rathbun, 361 F.3d at 77.  Because no reasonable factfinder could conclude that Joseph has established a prima facie case, his claim fails as a matter of law.  Old Dutch is therefore entitled to summary judgment on Joseph's discrimination in starting wages claim.

    D.    <u>Summary</u>

In summary, Old Dutch is entitled to judgment as a matter of law on the claims in Counts IV and VI of the second amended complaint, but not on the claim

in Count V.  Thus, the company's motion for partial summary judgment is granted as to Counts IV and VI, but denied as to Count V.

## CONCLUSION

Joseph's motion for summary judgment (doc. no. 23) is denied.  Old Dutch's motion for summary judgment (doc. no. 25) is granted as to Counts IV and VI but denied as to Count V.  The counts remaining for trial are Counts I, II, III, and V.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

December 21, 2020

cc:     Irvin Joseph, pro se
        Counsel of Record